UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
JASON CABRAL,

                        Petitioner,

                                        MEMORANDUM AND ORDER
            -against-                   12-CR-0336(JS)

UNITED STATES OF AMERICA,

                        Respondent.
----------------------------------X
APPEARANCES
For Petitioner:     Jason Cabral, Pro Se
                    #56827-018
                    FCI  Beaumont  Medium  Federal  Correctional
                    Institution
                    P.O. Box 26040
                    Beaumont, Texas 77720

For Respondent:     Christopher C. Caffarone, Esq.
                    United States Attorney's Office
                    Eastern District of New York
                    610 Federal Plaza
                    Central Islip, New York 11201


SEYBERT, District Judge:

          Pursuant to a Plea Agreement[1] with the Government that

included a waiver of his right to appeal or collaterally attack

his conviction and sentence, Jason Cabral ("Petitioner") entered

a guilty plea to two counts of firearm-related murder, in violation

of 18 U.S.C. § 924(j)(1).  Following his guilty plea, Petitioner

was sentenced to four hundred forty-four (444) months (i.e., 37

years) of incarceration followed by five years of supervised

--------------------------------------------

[1]  (See Ex. 1, Plea Agmt., ECF No. 188-1, attached to Government's
Opposition, ECF No. 188.)

release.    (See  Judgment,  ECF  No.  118.)    On  June  27,  2016,

Petitioner,  acting  pro se,  moved  this  Court  to  vacate,  set  aside,

or  correct  his  conviction  and  sentence  pursuant  to  28  U.S.C.  §

2255  (hereafter,  the  "Petition").    (See  ECF  No.  161.[2])    The

Government  opposed  the  Petition.[3]  (See  Opp'n,  ECF  No.  181.)    For

the  following  reasons,  the  Petition  is  DENIED  in  its  entirety.

BACKGROUND

I.    The Underlying Crimes[4]

Petitioner  was  the  leader  of  the  Central  Islip  chapter

of  the  Ñetas  street  gang.    In  early  2004,  the  Ñetas  Central  Islip

chapter  was  feuding  with  the  Latin  Kings,  a  rival  street  gang.    On

August  10,  2004,  as  the  feud  was  ongoing,  Petitioner,  with  co-

defendants  Alvaro  Cabral  ("Alvaro")  (Petitioner's  brother),

---

[2]  The  Court  will  use  the  page  numbers  generated  by  the  Court's
electronic  filing  system  ("ECF")  System  when  citing  to  the
Petition.

[3]  Although  given  the  opportunity  to  do  so,  Petitioner  did  not
file  a  reply.    (See  Aug.  15,  2019  Order  to  Show  Cause,  ECF  No.
171,  ¶3  ("Petitioner,  within  20  days  of  receipt  by  him  of  a  copy
of  the  return,  shall  file  a  reply,  if  any,  with  the  clerk  of  this
Court.");  see  also  Jan.  28,  2020  Elec.  ORDER  (extending
Government's  deadline  to  file  its  response  to  February  10,  202  and
instructing  "Petitioner's  reply,  if  any,  shall  be  filed  within
twenty  days  after  his  receipt  of  a  copy  of  Government's  response");
cf.  Case  Docket,  in  toto.)

[4]  The  facts  are  drawn  from  the  second  Superseding  Indictment  and
the  Presentence  Investigation  Report  ("PSR")  that  the  Court
adopted,  as  amended,  during  sentencing.  (Superseding  Indictment
(S-2),  ECF  No.  71;  PSR,  ECF  No.  100,  ¶¶  1-9;  Min.  Entry,  ECF  No.
117.)

Stephanie DiCarlo, Luis Benitez, and Arthur Sullivan (collectively, "Defendants"), hatched a plan to rob Anthony Marcano, a junior member of the Latin Kings.  Defendants lured Marcano, joined by Fabian Mestres, another junior Latin Kings member (hereafter, the "Victims"), to one of their homes under the guise of a drug deal.  Once inside, Alvaro, and others, wielded guns and beat and bound the Victims with duct tape while DiCarlo and Petitioner waited in a car down the street.  Defendants also stole the Victims' drugs, money, and jewelry.  Petitioner then ordered Alvaro and Benitez to kill the Victims.

In following Petitioner's instructions, the Defendants (and others) moved the Victims, who were still bound and alive, to the trunk of Marcano's car.  Alvaro and Benitez then drove the car to an abandoned warehouse in Queens, New York, with Petitioner following as a "measure of protection" in the event they were stopped by the police. After arriving at the warehouse, the Victims were ordered to their knees, whereafter Benitez killed them, execution style.  Defendants left the Victims in the warehouse parking lot where they were found the following day.  Petitioner directed Alvaro to sell Marcano's car; Alvaro also pawned off the Victims' stolen jewelry.

II.  Petitioner's Guilty Plea

On or around May 10, 2012, a grand jury charged Petitioner for his involvement in the murders.  (Indictment, ECF

No. 1.)  Petitioner was arraigned and detained on June 8, 2012 (Min Entry, ECF No. 17; Order of Detention, ECF No. 19).  As relevant here, on April 4, 2013, the Government filed a second Superseding Indictment (hereafter, the "Superseding Indictment") charging Petitioner with two counts of murder, in violation of 18 U.S.C. §§ 1959(a)(1), 2 and 3551 <u>et seq.</u> (Counts One and Two), and two counts of firearm-related murders, in violation of 18 U.S.C. §§ 924(j)(1), 2 and 3551 <u>et seq.</u> (Counts Three and Four). (Superseding Indictment (S-2), ECF No. 71.)

On February 3, 2014, pursuant to a Plea Agreement with the Government, Petitioner pled guilty to Counts Three and Four of the Superseding Indictment.  (<u>See</u> Min. Entry, ECF No. 91; Plea Agmt., ECF No. 188-1; Plea Tr., ECF No. 188-2.)  Prior to entering the plea, the Court determined that Petitioner: was competent; had not taken any medication; understood that he had an absolute right to go to trial; and understood that, at trial, it would be the Government's burden to prove Petitioner's guilt beyond a reasonable doubt. (Plea Tr. at 9:15-10:17.)  The Court further explained the applicable statutory penalties:

> The Court:  You understand that the charges you
>              will be pleading guilty to are maximum
>              of life.  There is no minimum sentence
>              and a maximum of five years of
>              supervised release on count three and
>              as to count four it is the same; also,
>              you are subjected to a $250,000 fine,
>              any restitution that I may set and a

special assessment fee of $200 for both
counts.

(Plea Tr. at 12:2-8.)  When asked if he understood this, Petitioner
responded that he did.  (Plea Tr. at 12:9-12.)  The Court further
explained that it would be looking at the advisory Guidelines,
which would involve various calculations, and in response to the
Court's inquiry whether Petitioner had reviewed the Guideline
ranges with his attorney, Petitioner stated that he had.  (Plea
Tr. at 12:13-20.)  The Court also instructed that while the
Guideline analysis was not binding on the Court, the combined
offense level would be a 48, meaning Petitioner was subjected to
life imprisonment; Petitioner affirmed his understanding of this.
(Plea Tr. at 12:22-1, 14:5-9.)  Of significance, Petitioner also
stipulated to the Guideline calculation.  (Plea Tr. at 20:24-
21:3.)

Moreover, Petitioner acknowledged: no one had forced him
to plead guilty; he had not been promised a particular sentence;
he did not have any agreements beyond those contained in the Plea
Agreement: and he was pleading guilty because that was the case.
(Plea Tr. at 21:9-22:10.)  Additionally, as part of his Plea
Agreement, Petitioner agreed that he would not appeal or otherwise
challenge his conviction or sentence if the Court sentenced him to
a term of imprisonment of 37 years or less, and acknowledged that
he agreed not to file an appeal or otherwise challenge his sentence

5

if he was sentenced to 37 years' imprisonment.  (Plea Agmt. ¶ 4;

Plea Tr. at 15:22-16:2.)

The Court asked Petitioner to explain what made him

guilty of the crimes; Petitioner responded:

> On August 10, 2004, I, along with others,
> agreed to rob a drug dealer and member of the
> Latin Kings street gang named Sincere who
> distributed marijuana, cocaine and crack in
> Central Islip.  We used a pretext of a drug
> deal to lure—motivate Sincere to go to the
> house in Suffolk County, New York.
>
> Sincere arrived at the house as a member of
> the Junior Kings and was nicknamed Spaz.  My
> coconspirators threated Sincere and Spaz with
> guns and ordered them to get on the floor and
> restrained them and duct taped them and stole
> their drugs and.[sic]
>
> After that they put them in the trunk of
> Sincere's car and they drove around locally
> until eventually they drove to Queens where
> they removed Sincere and Spaz from the car.
> While they were still driving on Long Island,
> I followed behind in another car to act as
> backup in case something went wrong.
>
> When they got to Queens, Benitez shot and
> killed both of them.  He called me afterwards
> to tell me that and what had occurred in the
> house.
>
> I was the leader of the gang called Fame, which
> was part of the Netas.   I ordered my
> coconspirators to commit the robbery and
> murder and agree if the case went to trial the
> government would be able to prove that the
> robbery affected interstate commerce.

(Plea Tr. at 19:18-20:19.)  Thereafter, pursuant to Criminal Rule

11, the Court accepted Petitioner's guilty plea, finding that

Petitioner made a knowing and voluntary waiver of his rights, and understood the consequences of pleading guilty. (Plea Tr. 23:7-11.)

III. Petitioner's Sentencing

Prior to sentencing, the PSR and the parties' pre-sentencing submissions were reviewed by the Court. Given the offense and Petitioner's criminal history, the Guidelines provided for a term of life imprisonment; the Probation Department recommended a life sentence. (PSR ¶ 100; Probation Rec., ECF No. 104-1, at 1.) In opposition, Petitioner argued for a 25-year sentence. (Sent'g Tr., ECF No. 188-3, at 4:20-22.)

On November 18, 2014, the parties appeared for sentencing. Prior to imposing its sentence, the Court adjusted Petitioner's total offense level to 47 (id. at 6:3-22), all parties agreed that life imprisonment was the applicable Guidelines range (id. at 6:9-7:8), and the Court adopted the Guidelines range (id. at 6:3-22). The Court then heard from defense counsel (id. at 8:13-25:9), the Victim's families (id. at 25:19-24, 26:25-29:12, 29:15-31:12), the Government (id. at 31:14-36:6), and Petitioner (id. at 36:16-22). After careful consideration of the Section 3553(a) factors,[5] the Court imposed a sentence of 37 years' imprisonment respectively on Counts Three and Four, to run

---

[5] See 18 U.S.C. § 3553(a).

concurrently, and five years' post-release supervision.  (Id. at 41:8-21.)  On November 24, 2014, the Court entered judgment on Petitioner's conviction.

DISCUSSION

I.  Legal Standard

To obtain relief under Section 2255, a petitioner must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000) (internal quotation marks and citations omitted). A petitioner must also show that the error had "substantial and injurious effect" that caused "actual prejudice."  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation marks and citations omitted); Underwood v. United States, 166 F.3d 84, 87 (2d Cir. 1999) (applying Brecht to a § 2255 motion).  Indeed, to "obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  United States v. Frady, 456 U.S. 152, 166 (1982).  A Court must exercise its discretion sparingly because Section 2255 applications "are in tension with society's strong interest in the finality of criminal convictions."  Elize v. United States, No. 02-CV-1530, 2008 WL 4425286, at *5 (E.D.N.Y. Sept. 30, 2008) (internal quotation marks and citation omitted); see also Brecht, 507 U.S. at 633–34.

II. <u>Analysis</u>

    A.  <u>Procedural Matters</u>[6]

        1.   <u>Timeliness</u>

        As an initial matter, the Government argues that Petitioner's petition was filed outside the limitations period, and, as such, is untimely. (Opp'n at 6.) The Government is correct.

        Generally, to bring a motion under Section 2255, a petitioner must file the motion one year from when the conviction is considered final. See 28 U.S.C. § 2255(f). Relevant to this Petition, the one-year limitations period can run from the later of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). The Court notes that without this tolling provision, Petitioner's time to file his Petition expired on November 24, 2015, one year from the date the Court filed Petitioner's Judgment. (See Judgment, ECF No. 118.) Petitioner filed his Petition on June 27, 2016, well beyond the one-year limitation period.

---

[6] While Petitioner seeks relief pursuant to § 2255 in what he describes as a "Motion for Leave to File a Second or Successive 28 U.S.C. § 2255 Motion" (Petition at ECF p.5), the record reflects that the instant Petition is Petitioner's only Section 2255 habeas motion.

Further, to the extent Petitioner tries to avoid the untimeliness of his Petition by implicitly relying upon 28 U.S.C. § 2255(f)(3), his reliance is unavailing. Petitioner vaguely argues that Elonis v. United States, 575 U.S. 723 (2015), McFadden v. United States, 576 U.S. 186 (2015), Molina-Martinez v. United States, 578 U.S. 189 (2016), and Johnson v. United States, 576 U.S. 591 (2015), should be applied to his case retroactively. (See Petition at ECF pp. 5-6.) The Court is not convinced. Elonis is not applicable to Petitioner's case as it dealt with 18 U.S.C. § 875(c), a federal criminal statute that makes it a crime to transmit in interstate commerce "any communication containing any threat . . . to injure the person of another", and that is silent on a defendant's required mental state; the Supreme Court instructed that courts are to read into such statutes only that mens rea which is necessary to separate wrongful conduct from otherwise innocent conduct and that the Government must prove such mens rea. See Elonis, 575 U.S. at 736-37. Nor is McFadden applicable; that case addressed the Controlled Substances Act ("CSA") and, in particular, the provision making it unlawful to knowingly manufacture, distribute, or possess with intent to distribute a controlled substance. The Supreme Court held "that § 841(a)(1) [of the CSA] requires the Government to establish that the defendant knew he was dealing with 'a controlled substance.'" McFadden, 576 U.S. at 188-89. Similarly, Molina-Martinez v. United

10

States, 578 U.S. 189 (2016), is not helpful to Petitioner since it has no retroactive applicability because it does not address a newly recognized right; rather, in resolving a Circuit split, the Supreme Court clarified the proper analysis under Criminal Rule 52(b), i.e., that when a defendant is sentenced under an incorrect Guidelines range, the error itself can be sufficient to show a reasonable probability of a different outcome absent the error. 578 U.S. at 198.   Finally, while Petitioner is correct that the applicability of Johnson is retroactive, it does not apply to Guideline vagueness challenges, one of Petitioner's implicit arguments here.   See Nunez v. United States, 954 F.3d 465 (2d Cir. 2020).   In sum, Petitioner's reliance upon Elonis, McFadden, Molina-Martinez, and Johnson in satisfying 28 U.S.C. §2255(f)(3) fails.

Even if that were not the case, as discussed, infra, the Court would deny the Petition on the merits.

### 2.   Petitioner's Collateral Attack Waiver

The Government further argues that the Petition must be denied because Petitioner waived his right to collaterally attack his plea or sentence under the Plea Agreement.   (Opp'n at 7-8.) Again, the Government's argument is sound.

"A defendant's knowing and voluntary waiver of the right to . . . collaterally attack his conviction and/or sentence is enforceable."   Sanford v. United States, 841 F.3d 578, 580 (2d

11

Cir. 2016) (per curiam).  Petitioner does not argue that that his
waiver was unknowing or involuntary.  See Garcia-Santos v. United
States, 273 F.3d 506, 508 (2d Cir. 2001) (per curiam) (affirming
that an appeal waiver was knowing and voluntary where a petitioner
failed to claim that he did not understand the waiver in a plea
agreement); Elliott v. United States, No. 17-CR-0127, 2019 WL
6467718, at *4 (E.D.N.Y. Dec. 2, 2019).  Nor can he.  Here, the
Court "thoroughly questioned [Petitioner] about his Plea
Agreement, ensuring [he] had discussed the Agreement with his
counsel and understood it, including that he was waiving certain
rights, among which was the right to collaterally challenge the
sentence the Court would impose upon him[.]"  United States v.
Baig, No. 13-CR-0351, 2020 WL 4607662, at *4 (E.D.N.Y. Aug. 11,
2020); (see Plea Agmt. ¶ 4; see also Plea Tr. at 14:16-23.)  Before
accepting the guilty plea, the Court conducted a "Criminal Rule 11
allocation of [Petitioner], ensuring that [he] was knowingly and
voluntarily pleading guilty."  Baig, 2020 WL 4607662, at *4.  Given
this Court's extensive colloquy with Petitioner, it found
Petitioner's guilty plea to be knowing and voluntary.  (See supra
BACKGROUND at 4-6.)  Therefore, Petitioner's collateral attack
waiver is valid barring Petitioner's instant challenge to his
conviction and sentence.

Moreover, Petitioner's claim of ineffective assistance
of counsel does not shield him from his collateral attack waiver.

12

Generally, a waiver of collateral attack rights in a plea agreement in unenforceable where a petitioner claims ineffective assistance of counsel in connection with the plea agreement itself.  See Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir. 2002), cert. denied, 537 U.S. 1146 (2003); see also United States v. Hernandez, 242 F.3d 110, 113-14 (2d Cir.2001) ("[A] plea agreement containing a waiver of the right to appeal is not enforceable where the defendant claims that the plea agreement was entered into without effective assistance of counsel").  Even so, the Second Circuit has clarified that a waiver of the right to appeal is not automatically unenforceable when a claim of ineffective assistance of counsel involving a plea is asserted. United States v. Monzon, 359 F.3d 110, 118 (2d Cir. 2004).  Where the record reveals that the waiver was knowing and voluntary, and that there is no merit to the ineffective assistance claim, the waiver should be enforced.  See id. at 119.  Further, when evaluating an ineffective assistance claim, a court may consider the petitioner's own prior statements, including statement that the petitioner made under oath at his plea hearing, which sworn statements carry a "strong presumption of verity."  Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also Yushavyev v. United States, 532 F. Supp. 2d 455, 471 (E.D.N.Y. 2008) (quoting Blackledge).

As such, the Court addresses Petitioner's claims on the merits, and, for the reasons stated <u>infra</u>, finds that his ineffective assistance of counsel claim is without merit. Accordingly, Petitioner's waiver of the right to collaterally attack his appeal is enforceable.

B. <u>Merits</u>

1. <u>Ineffective Assistance of Counsel</u>

For Petitioner to prevail on his ineffective assistance of counsel claim, he must "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms,' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." <u>United States v. Cohen</u>, 427 F.3d 164, 167 (2d Cir. 2005) (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 693 (1984)). When considering counsel's alleged errors, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689. If a petitioner is able to establish an error of constitutional magnitude, he must next establish that he was prejudiced by counsel's performance, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.

14

To succeed on an ineffective assistance of counsel claim in the context of guilty plea, "the petitioner must show that the plea agreement was not knowing and voluntary, because the advice he received from counsel was not within acceptable standards." Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008) (internal quotation marks and citations omitted).  If a petitioner shows that he was subjected to objectively unreasonable representation, he must still show that he was prejudiced.  In other words, he must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985).  Crucially, "[a] defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea."  United States v. Coffin, 76 F.3d 494, 497 (2d Cir. 1996).

### i.   Guidelines and Statutory Penalties Claim

Petitioner claims that his attorney was ineffective for failing to advise him of the applicable Guidelines and the statutory penalties of his guilty plea.  Petitioner's claim is unavailing as it is contradicted by the record.

First, Petitioner's Plea Agreement laid out the maximum statutory penalties that would result from his guilty plea to the two counts pursuant to 18 U.S.C. § 924(j)(1), namely that the

15

maximum sentence would be life imprisonment.  (Plea Agmt. ¶ 1.)
The Plea Agreement further set forth the applicable Guidelines,
including a breakdown of the estimated calculation, which started
at a base level 43.  (Plea Agmt. ¶ 2.)  Petitioner signed the Plea
Agreement, with Petitioner specifically acknowledged that he had
"read the entire agreement and discussed it with [his] attorney"
and that he "underst[oo]d all of its terms" and was therefore
"entering into it knowingly and voluntarily."  (Plea Agmt. at 8.)
Thereunder, Defense Counsel Sapone (hereafter, "Counsel" or
"Saone") also signed the Plea Agreement, acknowledging his
approval of same.  (See id.)

    Second, as is evident from the plea hearing, the Court
provided a detailed explanation to Petitioner of the statutory
penalties for pleading guilty to the two counts, Counts Three and
Four, brought pursuant to 18 U.S.C. § 924(j)(1), including that
the charges to which Petitioner was pleading guilty carried a
maximum sentence of life imprisonment; the same was true as to the
applicable Guidelines ranges.  (Plea Tr. at 8:20-14:14.)   In
addition, Petitioner confirmed to the Court that he had reviewed
his Plea Agreement and the applicability of the guidelines with
his attorney.  (Id. at 12.)  Moreover, not only did Petitioner
state under oath and on the record that he understood the statutory
penalties and Guidelines, he stipulated to the Guideline
calculation.  (Id. at 20:24-21:3.)

16

Additionally, Sapone provided an affidavit detailing his representation of Petitioner.  (See Sapone Decl., ECF No. 188-4.) In it, Sapone averred: he met with Petitioner to explain, at length, the terms of the Plea Agreement (id. at ¶ 21); he explained to Petitioner that should Petitioner plead guilty, he would face a maximum sentence of life imprisonment, with no minimum sentence, as well as a maximum of five years' post-release supervision (id.); he discussed and explained the applicable Guidelines calculation with Petitioner, which included a base offense level of 43, and that, based on the Guidelines analysis, Petitioner's adjusted offense level would be 48 (id. at ¶¶ 22-26); and that, based on their conversations, Petitioner authorized Sapone to request a change of plea hearing (id. at ¶ 28).

Thus, upon the record, the Court finds no basis supporting Petitioner's claim that Sapone was ineffective for failure to advise Petitioner about the applicable statute and Guidelines. assistance of counsel.  Instead, it is clear that Counsel Sapone acted in an objectively reasonable manner in his representation of Petitioner.

Even if that were not so, Petitioner fails to articulate how he was prejudiced by Counsel's purported errors.  Assuming arguendo that Sapone's representation constituted deficient performance, Petitioner acknowledged that he read and understood the terms of the Plea Agreement.  And, as already stated, the Court

17

fully explained to Petitioner the statutory penalties and applicable Guidelines to which he would be subject before he plead guilty.   Given the abundant record evidence demonstrating Petitioner was fully apprised of the consequences of his guilty plea to Counts Three and Four, he cannot establish he was prejudiced by counsel's representation.   Accordingly, the Court rejects Petitioner's meritless claim of ineffective assistance of counsel.

ii.  <u>Section 1111 Claim</u>

Petitioner further contends that he was sentenced under the wrong statute, <u>i.e.</u>, 18 U.S.C. 1111, and, as a consequence, was sentenced under the wrong Guideline.  (Petition at ECF pp. 9-10.)  To advance this contention, Petitioner argues that: (1) he was not made aware that, should he proceed to trial, the Government would have had to meet its burden of proof under the federal homicide statute; and (2) "no one advised [him] on any of these elements, or how these different guideline [<u>sic</u>] and statutes work."  (<u>Id.</u> at ECF pp. 8-11.)  The Court interprets Petitioner's Section 1111 claim as an additional ground supporting his ineffective assistance claim and addresses it as such.

Petitioner's claim is not supported by the record and is without merit. For example, in his Declaration, Sapone stated:

> Concerning the allegations raised in Mr. Cabral's June 2016 [M]otion, he is mistaken about several things.  First, he did not plead

> guilty to, nor was he sentenced based on, a
> violation of 18 U.S.C. § 1111. As I explained
> to him at length, 18 U.S.C. § 924(j)(1), the
> statute to which Mr. Cabral did plead guilty,
> refers to the definition of murder set forth
> in 18 U.S.C. § 1111. I explained to Mr. Cabral
> in great detail why the crimes to which he
> pleaded guilty implicated the base offense
> level for murder in the first degree. He
> indicated he understood during our
> conversation, when he signed the plea
> agreement, on the record during his plea
> allocution, when reviewing the presentence
> investigation report, and at the time of
> sentencing.

(Sapone Decl. ¶ 35; cf. Judgment (devoid of any reference to 18

U.S.C. § 1111).)  Additionally, Counsel declared that he reviewed

discovery with Petitioner, and explained what the Government would

be required to prove should the case proceed to trial.  (Sapone

Decl. ¶ 18.)  Sapone also recounted that, prior to Petitioner's

guilty plea, he (Sapone) explained to Petitioner: that the crimes

to which he would be pleading guilty incorporated the definition

of felony murder, as defined by 18 U.S.C. § 1111 (id. at ¶ 22);

and, that Petitioner "was not pleading guilty to a violation of 18

U.S.C. § 1111, only that his statutes of conviction (18 U.S.C. §

924(j)(1)) and his Guidelines referred to the definition of murder

contained in that statute" (id.).  In light of the record evidence,

Petitioner fails to demonstrate that Counsel's representation was

deficient.  Rather, the opposite is true; Sapone's representation

of Petitioner fell well within the wide range of reasonable

professional assistance.

Additionally, Petitioner fails to demonstrate prejudice, i.e., that but for counsel's error, Petitioner would not have plead guilty.  Rather, because the Guidelines used to sentence Petitioner were correct, no error is had and Plaintif cannot demonstrate he suffered prejudice.  In any event, there is no indication that Petitioner would not have pled guilty.  Instead, under oath at his plea hearing, Petitioner stated he: (1) understood his plea (Plea Tr. at 15:11-16:2); (2) understood the statutory penalties and applicable Guidelines (id. at 12:2-14:15); (3) was stipulating to the Guidelines calculation (id. at 20:24-21:3); (4) wished to enter the guilty plea (id. at 21:5-22:18); and (5) understood the rights he was forfeiting by entering the guilty plea (id. at 9:24-10:12). Petitioner also made a detailed factual allocution regarding his criminal conduct and warranting his conviction and sentence. (See id. at 19:18-20:19).  And, as the Government aptly argues:

> [T]he record is clear that Cabral would have pleaded guilty whether he was fully advised of Section 1111's application to his case. During his plea, he informed the [C]ourt that he wished to plead guilty, he was pleading guilty because he was guilty, and he was not being forced or pressured to plead guilty. Moreover, in exchange for pleading guilty, the [G]overnment agreed to dismiss the two murders in aid of racketeering [counts], each of which carried a statutory mandatory minimum sentence of life imprisonment. Additionally, the [G]overnment agreed not to recommend a sentence greater than 37 years' imprisonment, which was below the applicable Guidelines range of life imprisonment.

20

(Opp'n at 13-14 (citing Plea Tr. at 21-11; Plea Agmt. at ¶¶ 2, 5).)  Thus, the record demonstrates that Petitioner and his Counsel "negotiated a favorable disposition that substantially reduced both [Petitioner]'s statutory minimum and maximum sentencing exposure."  (Id. at 14.)  Hence, upon the record presented and in the absence of a showing of prejudice, Petitioner's argument that counsel was ineffective for failing to explain the interplay of 18 U.S.C. § 1111 is unsustainable and is, therefore, rejected.

***

To the extent not explicitly addressed, the Court has considered the Petitioner's other arguments in support of habeas relief and finds them to be without merit.

CONCLUSION

Accordingly, for the reasons set forth above, **IT IS HEREBY ORDERED** that Petitioner's Petition (ECF No. 161) is **DENIED**.

**IT IS FURTHER ORDERED** that because there can be no debate among reasonable jurists that Petitioner is not entitled to habeas relief, the Court does not issue a Certificate of Appealability. 28 U.S.C. § 2253(c); see also Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir. 2005).

**IT IS FURTHER ORDERED** that the Clerk of the Court: (1) mark CLOSED the corresponding civil case, Case No. 16-CV-3633; and (2) mail a copy of this Order to Petitioner at his address of

record, including the notation "Legal Mail" on the mailing envelope.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:      February _2_,2022
            Central Islip, New York